BOARD OF ALDERMEN OF DENVER ET AL. V. DARROW.

1. PROPER REMEDY FOR CITY ALDERMAN WHO HAS BEEN DISTURBED IN ENJOYMENT OF HIS OFFICE.— Where one in possession of the office of city alderman seeks only a review of the proceedings taken by the board of aldermen in disturbing him in the enjoyment of it, his remedy is by *certiorari*, and not *quo warranto*.

2. POWER OF COURTS TO REVIEW ACTION OF BOARD OF ALDERMEN IN OUSTING A MEMBER.— The charter of the city of Denver, article 2, section 3, which provides that "each board [of aldermen] shall be the sole judge of the qualifications, election and returns of its own members," does not divest the courts of their correctional power, by *certiorari*, to review the regularity of the proceedings of such board in ousting a member.

3. SUMMARY REMOVAL OF ALDERMAN BY RESOLUTION OF BOARD ILLEGAL.— One who has been duly elected, qualified and inducted into office as a city alderman cannot be summarily removed, by resolution of the board, upon a charge of disqualification, without notice and without hearing or investigation of any kind.

*Appeal from Superior Court of Denver.*

THIS was a proceeding by *certiorari* to review the action of the board of aldermen of the city of Denver in amoving the appellee from the position of alderman and president of the board of aldermen of the city of Denver.

It is averred by the petition that the appellee was on the 7th day of April, 1885, at an election held within the city of Denver pursuant to law, duly elected a member of the board of aldermen of said city, in and for the Fifth ward, for the term of two years next ensuing. That on the 9th of April, 1885, upon a canvass of the votes cast at the said election, in pursuance of the statute of the state of Colorado, he was declared to have received a majority of all the votes cast in said Fifth ward for alderman of said ward, and duly elected as such alderman. That a certificate, in due form of law, was issued to him; and that on the 14th day of April, 1885, he duly qualified as such alderman, and thereafter entered upon the discharge of the duties of such office. That on the

14th day of April, 1885, he was duly elected president of the said board of aldermen, and duly inducted into the office of president of said board.    That he continued to sit in said board, as a member thereof, and to preside over the same as president thereof, until the 20th day of November, 1885.

That on the 20th day of November, 1885, the following resolution was introduced and passed by a vote of five ayes against four nays: "Whereas, it is provided by article 2 of the city charter of the city of Denver that members of the city council shall be possessed of certain definite qualifications in order to make them eligible to hold the office of either a supervisor or alderman of the said city, among which said qualifications is that of having been for at least one year a tax-payer in the city of Denver; and, whereas, the supreme court of this state has declared the said provision constitutional and valid; and, whereas, the said supreme court has declared that the power to pass upon such question of eligibility is exclusively vested in the board of aldermen of the city of Denver, so far as the members of its body are concerned; and, whereas, it has been confessed by one George G. Darrow, an acting member of the board of aldermen of this city, that he is not eligible to the office aforesaid, or as a member of the city council aforesaid, in consequence of the provision of law as above set forth, namely, that he, the said George G. Darrow, was not a tax-paying citizen for at least one year in the city of Denver prior to his taking his seat in said body; and, whereas, the rights and interests of the people whom we represent ought not to be jeopardized and set at naught by continuing and recognizing in office a man who has already, under the facts and the law, no right to such office; and, whereas, we are under the obligation of a solemn oath to obey the law, therefore, be it resolved by the board of aldermen of the city of Denver that the said acting member of the board of aldermen, namely, George G. Darrow, acting in

said body as alderman of the Fifth ward of the said city of Denver to the said city council, and now acting as presiding officer of this body, is ineligible to hold the said office or to perform any of the duties or functions whatsoever pertaining or belonging to said office, or to have or receive any of the emoluments or remunerations arising therefrom or belonging thereto, by reason of his said liability and incapacity to hold the same; and be it resolved that the said George G. Darrow be declared ineligible and incapable to hold the office of alderman of the Fifth ward, as aforesaid, to the said city council as aforesaid, and as a member of this body, and that a vacancy be declared to exist in the office of alderman of the Fifth ward of the city of Denver to the said city council; and be it further resolved that the city clerk shall as soon as practicable deliver to the mayor of the city a certified copy of these resolutions, informing him of the vacancy that exists in the said office of alderman from the Fifth ward; and that he be requested to call a special election in the said ward, according to law, for a day certain, to be by him fixed, for the purpose of holding an election in the said Fifth ward to fill the vacancy hereby created."

That prior to the passage of this resolution no proceedings of any sort had ever been, or were, instituted by said board of aldermen against petitioner to oust him from the office of alderman; that he had no notice whatever that said resolution was to be introduced at any time before the same was introduced. That he petitioned the board to afford him a hearing upon the matters alleged in the resolution, and to give him time to produce proof of his qualifications to hold and exercise the office. That he was well able and willing to produce such proof if afforded an opportunity. That he was refused a hearing on the matters charged and set forth in the resolution, and that at the time he possessed and still possesses the qualifications prescribed by law to qualify and enable him to have, hold and enjoy the office of al-

derman.   He, as president of the said board, declared
that the resolution had not legally passed, because there
had been cast therefor but five of the votes of the nine
aldermen constituting said board, when, in law, to re-
move him from his position as alderman aforesaid, two-
thirds of the votes of all the aldermen constituting said
board were required.   That he refused to vacate his seat
as president of said board, and to abandon his office as
alderman, but, nevertheless, was forcibly compelled to
vacate his seat, and forcibly expelled from the council
chamber.   To this petition a demurrer was interposed, —
for misjoinder of parties defendant; to the jurisdiction
of the court; that the complaint does not state facts suf-
ficient to constitute a cause of action; that the causes of
action have been improperly united; and that the com-
plaint is ambiguous, unintelligible and uncertain.   The
demurrer was overruled, decree entered in conformity
with prayer of the petition, and appeal prayed and al-
lowed.

Mr. ISHAM WHITE, for appellants.

Messrs. DECKER & YONLEY, for appellee.

RICHMOND, C.   The only question presented for our
consideration by either party is: *First*, the jurisdiction
of the court; and *second*, the legality of the action in
ousting appellee out of his position as president of the
board of aldermen, and amoving him from the office of
alderman.

It is contended by appellant that appellee has mis-
taken his remedy in the prosecution of the writ of *certi-
orari;* that he should have proceeded by *quo warranto*
against his successor in office.   If title of one in posses-
sion of an office was to be tried, it is conceded *quo war-
ranto* would be the appropriate remedy.   But the relator
in this case, being in possession of the· office, seeks only
a review of the proceedings taken by the board of alder-

men which disturb him in the enjoyment of it. This can only be done by *certiorari*. *Bradshaw v. City Council of Camden*, 39 N. J. Law, 416.

The further contention of appellant is that by statute the board of aldermen are made the sole judges of the qualifications of its members, and that any action they may take in this particular is not a subject of review by the court. In other words, that they can proceed at any time to make or unmake aldermen, without their action being subject to review. "The unquestionable weight of authority in this country is, if an appeal be not given, or some specific mode of review provided, that the superior common-law courts will, on *certiorari*, examine the proceedings of municipal corporations, even although there be no statute giving this remedy; and, if it be found that they have exceeded their chartered powers, or have not pursued those powers, or have not conformed to the requirements of the charter or law under which they have undertaken to act, such proceedings will be reversed and annulled. An aggrieved party is in such case entitled to a *certiorari ex debito justitiæ*." 2 Dill. Mun. Corp. § 926, and authorities cited.

Section 323 of the code (Gen. St. 1883) provides that "the writ may be granted, on application, by any court of this state, except a justice's, county or mayor's court. The writ shall be granted in all cases where an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, and there is no appeal, nor, in the judgment of the court, any plain, speedy and adequate remedy."

It is not disputed that the controversy between the board of aldermen and appellee was judicial in its nature; and it is conceded that the powers of the board were sufficient for the determination of all questions involved in the controversy. As these were judicial questions, we we must regard the board itself as exercising judicial functions, and as exercising such functions in subordina-

tion and subject to the supervision of the courts. It would be very unfortunate if an arbitrary, wanton and illegal exercise of the powers conferred upon such body were beyond the remedial interposition of the courts.

In Illinois it is held that the common-law writ of *certiorari* may issue from the circuit court to all inferior tribunals and jurisdictions, in cases where they exceed their jurisdiction, or where they proceed illegally, and there is no appeal or other mode of directly reviewing their proceedings. *Miller v. Trustees of Schools*, 88 Ill. 27; *Commissioners v. Supervisors*, 27 Ill. 141; *Commissioners v. Harper*, 38 Ill. 105; *State v. Dowling*, 50 Mo. 136.

This disposes of the preliminary question, and the next inquiry is to what extent can the court go in reviewing the proceedings?

Section 329 of the code (Gen. St. 1883) provides that "the review upon the writ shall not be extended further than to determine whether the inferior tribunal, board or officer has regularly pursued the authority of such tribunal, board or officer."

It is clear that the courts are confined to the question of jurisdiction, and the regularity of its exercise. To this extent, however, the review will be extended, notwithstanding the provision of section 3, article 2, of the charter of the city of Denver provides that "each board shall be the sole judge of the qualifications, election and returns of its own members." *St. Paul v. Marvin*, 16 Minn. 102 (Gil. 91); *Whitney v. Board of Delegates*, 14 Cal. 480; *Railroad Co. v. Placer Co.* 43 Cal. 366; *Kendell v. Camden*, 47 N. J. Law, 66.

While power is vested in the courts by *certiorari* to review the proceedings of all inferior jurisdictions, to correct jurisdictional errors, they will not rejudge their judgments on the merits. The correctional power extends no further than to keep them within the limits of their jurisdiction, and to compel them to exercise it with

regularity. *Chase v. Miller*, 41 Pa. St. 410; *Gibbons v. Sheppard*, Brightly, Elec. Cas. 539. In the case at bar the superior court was not called upon, nor did it assume, to judge of the merits of the controversy between the board of aldermen and appellee, but merely to review the regularity of the proceedings of the board.

It is not necessary to look beyond the record in this case, and this brings us to the question of the legality of the action of the board in setting aside and annulling the election of appellee on the 7th of April, 1885.

In support of the position assumed by appellant, our attention is called to the case of *Darrow v. People*, 8 Colo. 417. It is claimed by appellants' attorney that this opinion warranted the proceedings taken by the board of aldermen, and that their conduct in passing the resolution and ousting appellee from office was in fact directed by the court; that the court, having determined that they were the sole judges of the qualifications of the members of the board, practically determined that their action was not the subject of review by any court; that the manner and form of removing a person from the office of alderman was absolutely and exclusively within the jurisdiction of the board of aldermen, without the power of review by the courts; that the manner and form of their action could not be reviewed. We do not so understand the opinion of this court in that case. On the contrary, we think a careful review of the opinion will sustain altogether a different position; for the court say, on page 423: "It often happens that the particular fact which renders a party ineligible to hold a given position is unknown to the public until long after his election and induction into office. It is even true that sometimes such disability is not discovered by the candidate himself until he has for a considerable period been performing his official duties. An obligation rests upon the council, when the question is properly presented, to investigate the alleged disability, and, if it be proven, to

oust the incumbent, though his term of office be about to expire.   There is a marked difference between canvassing the vote, and declaring the result of such canvass, and investigating a charge of prior disqualification which may afterwards be presented.   While the present counsel cannot perform the former duty, they are certainly in a position to discharge the latter.   If any rules or regulations are essential to a proper investigation of alleged disqualifications of aldermen, the same may be supplied."   This language clearly implies that an investigation upon a charge of prior disqualification was contemplated.   It cannot be claimed that the court intended, or even intimated, that one who had been duly elected, duly qualified, duly inducted into office as an alderman, could be summarily removed by resolution upon a charge of disqualification without notice, without hearing or investigation of any kind.   The contrary is the strict letter and spirit of the opinion, and, in our judgment, is in keeping with the majority of authorities upon this question.

It is admitted by the demurrer, and the record discloses the fact to be, that the introduction of this resolution, and its passage, was without any notice to appellee, and in opposition to his direct protest.   That he was present when the resolution was passed argues nothing in support of the action of the board.   He was present as a member of the board; and, when so present, urged a postponement of any action, and asked an opportunity to be heard in opposition to the charges.   It is merely recited in the resolution that he has confessed his disqualification for the office.   How, when, where, to whom, does not appear.   The mere recital does not prove the truth of the allegation.   "Much is not proven because much has been said."   Can it be said that the *ipse dixit* of one or more individuals to the effect that appellee had confessed that he was not a tax-payer within a year prior

to his election to office is sufficient of itself to warrant his summary removal from office?

Not a single authority is produced on the part of appellants in support of this action by the board, and we are confident that not one can be produced. 1 Dill. Mun. Corp. §§ 245, 250, 253, 254, lays down these rules: "When the terms under which the power of amotion is to be exercised are prescribed they must be pursued with strictness. Whether, if the power to expel or remove be given for certain causes, this excludes the right to exercise the power in any other case, will depend upon the intent of the legislature, to be gathered from a consideration of the whole charter or statute."

"Where an officer is appointed during pleasure, or where the power of removal is discretionary, the power to remove may be exercised without notice or hearing. But where the appointment is during good behavior, or where the removal can only be for certain specified causes, the power of removal cannot be exercised, unless there be a charge against the officer, notice to him of the accusation, and a hearing of the evidence in support of the charges, and an opportunity given to the party of making a defense." "The proceeding, in all cases where the amotion is for cause, is adversary or judicial in its character; and, if the organic law of the corporation is silent as to the mode of procedure, the substantial principles of the common law as to proceedings affecting private rights must be observed."

"First, the officer is entitled to a personal notice of the proceeding against him and of the time when the trial body will meet. * * * But it should contain the substantial fact that a proceeding to amove is intended. * * * There must be a charge or charges against him specifically, stated with substantial certainty, and reasonable time and opportunity must be given to answer the charges and to produce his testimony; and he is also

entitled to be heard and defended by counsel, and to cross-examine the witnesses, and to except to the proofs against him. If the charge be not denied, still it must, if not admitted, be examined and proved." *Mead v. Treasurer*, 36 Mich. 419; *Murdock v. Trustees*, 12 Pick. 244; *Page v. Hardin*, 8 B. Mon. 668; 2 Wat. Corp. 557, § 312; Ang. & A. Corp. § 429; *Field v. Com.* 32 Pa. St. 484; *Dullam v. Willson*, 53 Mich. 392.

The line of authority is not by any means exhausted, but enough have been cited to show that the action of the board in this case cannot be upheld as a legal and proper exercise of the power conferred. The judgment should be affirmed.

PATTISON and REED, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*