STATE *ex rel.* HITCHCOCK v. HEWITT *et al.*, Board of Regents of Education.

1. Where an officer is appointed for a definite term, subject to removal for specified causes, he can be so removed only after notice to him of the cause assigned, and an opportunity given him to defend.
2. A trustee of the state agricultural college appointed by the board of regents of education, as provided by section 4, art. 14, of the constitution, is not a "state officer," within the meaning of section 3, art. 16, of the constitution, providing that "state officers" are liable to impeachment.
3. The constitution, section 4, art. 16, having specified the causes for which such trustee may be removed, section 5, c. 6, Laws 1890, authorizing the board of regents to remove trustees for "sufficient cause," must be understood to mean by "sufficient cause" one or more of the causes so enumerated in the constitutional provision referred to.

(Syllabus by the Court. Opinion filed July 13, 1892.)

Original proceedings in *mandamus* on the relation of A. E. Hitchcock against Edward F. Hewitt and others, as members of the board of regents of education, to compel them to restore him to the office of trustee of the agricultural college. Peremptory writ granted.

The facts are stated in the opinion.

*A. E. Hitchcock*, for plaintiff.

*Mandamus* is the proper form of proceeding to correct a wrongful removal from office and to restore the party removed. High Ex. Leg. Rem. 68; section 5517, Comp. Laws; Kennedy v. Board, 22 Pac. 1044; Driscoll v. Jones, 1 S. D. 8; State v. Shakespeare, 8 So. 893; State v. Mayor, 19 Atl. 780. The power of removal cannot be exercised summarily, *ex parte*, without notice and an opportunity for defense. Section 5, c. 6, Laws 1890; *Ex parte* Ramshay, 18 Q. B. 173; Queen v. Archbishop, 1 El. & El., 545; Capel v. Child, 2

Crop. & J., 558; Dullam v. Wilson, 19 N. W. 112; Ham v. Board, 7 N. E. 540; State v. St. Louis, 90 Mo. 19; Com. v. Slifer, 25 Pa. St. 23; Biggs v. McBride, 21 Pac. 881; People v. Commissioners, 72 N. Y. 445.

An office is a special duty, trust, or charge, conferred by authority and for a public purpose. 1 Wait's Act. & Def. 1; U. S. v. Hartwell, 6 Wall. 385; U. S. v. Lockwood, 1 Pin. 363.

The legislature cannot provide any other manner of removal of a state officer than that prescribed by the constitution. Lowe v. Com., 3 Met. 237; Page v. Hardin, 8 B. Mon. 648; Brown v. Grover, 6 Bush. 1; Com. v. Gamble, 62 Pa. St. 342; State v. Draper, 50 Mo. 353; Id. v. Thomas. 10 Kan. 191; Id. v. McNeely, 24 La. Ann. 19; 5 Wait's Act. & Def. 12; Com. v. Sutherland, 3 Serg. & R. 145; People v. Draper, 15 N. Y. 532; State v. Williams, 5 Wis. 308; Id. v. Baker, 38 Wis. 71.

Robert Dollard, Attorney General, for defendant.

A state officer may be removed for cause without formal charges, notice or hearing. People v. Mays, 117 Ill. 257; Territory v. Cox, 6 Dak. 501; People v. Stewart, 41 N. W. 392; Donahue v. County, 100 Ill. 94.

KELLAM, P. J. This is an original application to this court for a writ of mandamus; the attorney general, in behalf of the state, resisting the application on the merits, but filing a written expression of his opinion that the questions involved are of such public interest, and their early settlement so important, that they should be entertained and determined by this court in the first instance. The affidavit of the relator recites the following facts as the foundation of his application for the writ: That in the month of March, 1891, at a regular and lawful meeting of the board of regents of education of the state of South Dakota, he then being eligible, relator was duly and legally appointed and elected a member of the board of trustees for the South Dakota Agricultural College, located at Brookings, for the term of five years; that he immediately qualified, and entered upon the discharge of his duties as a member of said board, and has ever since so continued; that on or about the 7th day of January, 1892, at a regular meeting, the said board of regents passed and adopted a resolution and

order summarily removing said relator from said office of trustee of said agricultural college; that relator was not notified in any manner that said board would take action upon any such resolution or order, nor that any charges or complaint had been made against his official conduct; that the first and only notice relator received that such action was contemplated, or would be or had been taken, was a written notice thereof, signed by the secretary of said board of regents, informing this relator that he had been "relieved from duty as a trustee of said agricultural college, by dismissal by authority of law and for cause;" that said board of regents has ever since refused, and still refuses, to recognize this relator as a member of said board of trustees of the agricultural college, or to allow him to further perform the duties of said office; that there is no incumbent of the office from which this relator was thus removed and this relator desires to continue and perform the duties of said office; and that there is no plain, speedy, and adequate remedy in the ordinary course of law. Upon this affidavit relator asks a writ of *mandamus* requiring the said board of regents of education to restore him to the use and enjoyment of the office of trustee of said agricultural college. The attorney general, upon the part of the state, filed a demurrer to this affidavit, on the ground that it did not state facts constituting a cause of action, or which entitled relator to relief.

The plaintiff, or relator, contends that the resolution and action of the board of regents were unauthorized and illegal for at least two reasons: (1) Conceding the authority of the board of regents to determine whether cause for removal existed, and then to act upon such conclusion, it could not legally exercise the power of removal, *ex parte*, or without investigation, after notice to plaintiff, and (2) that the statute authorizing the board of regents to remove trustees is in conflict with the constitution, and is therefore void. Both the board of regents of education and the board of trustees for the several educational institutions are constitutional boards. Section 3, art. 14, of the constitution, provides that "the state university, the agricultural college, the normal schools, and all other educational institutions that may be sustained, in whole or in part, by the state, shall be under the control of a board

of nine members, appointed by the governor and confirmed by the senate, to be designated the 'regents of education,'" etc. Section 4 provides that "the regents shall appoint a board of five members for each institution under their control, to be designated the board of trustees.' They shall hold office for five years, one member retiring annually," etc. Chapter 6 of the law of 1890 is supplementary to these constitutional provisions, and designed to carry them into execution. Section 5 of said chapter 6 provides: "Said board of regents shall have power to remove any or all of such trustees for sufficient cause." Section 8, in enumerating the powers and duties of said board of regents, gives them "full power at all times * * * to inquire and examine into * * * the official conduct of the trustees," etc. Section 11 authorizes such regents, or any one of them, "to administer oaths, and examine any person or persons in relation to any matters connected with the inquiries authorized by this act." The relator's alleged grievance is that the board of regents, assuming to act under these provisions of said chapter 6, determined upon, and, so far as they could do so, effected, his dismissal and removal from his said office of trustee, without any notice to him, or knowledge on his part that such action was contemplated, and without any opportunity given him to be heard in his defense. The attorney general concedes that the preponderance of authority is against the power to remove for cause an officer whose term of office is fixed by law, without notice to him and an opportunity to be heard, but suggests that this question was very thoroughly discussed by Chief Justice TRIPP in Territory v. Cox, published in appendix to 6 Dak. 501; and the conclusion reached by that learned judge was in favor of the power of removal without notice, unless the law authorizing removal required notice. Not being the judgment of the supreme bench, the opinion is not claimed to govern under the rule of *stare decisis*. We have examined the opinion with great interest, both because of the acknowledged ability of its author, and because we found it a very thorough and elaborate discussion of questions closely connected with the one now presented to us. In the Cox Case, however, the question was whether or not, under the statute involved, the governor had the power of removal. It was a ques-

tion of power rather than of the manner of its exercise.   The state-
ment of facts does not show whether the removed trustees had pre-
vious notice, and opportunity to appear before the governor, or not,
but it does affirmatively appear that such executive action was
only taken after investigation.   Besides, in the decision of that
case much importance was attached to the phraseology of the
law under which the governor acted in making the removal.   By
it he was authorized, "at his discretion, to take such action for the
public security as the exigency may demand."   So that whatever
authority was conferred was to be exercised at his discretion, and
the case did not present the same question in this respect as would
have been presented if such removal were only authorized to be
made for cause shown.   At all events, the controlling question in
this case was not even an important question in that, if, indeed, a
question at all.

   We do not think it necessary, or even important, upon the first
branch of this case, to discuss the abstract question whether, un-
der statutes like this, the power of removal, or the proceedings
by which its accomplishment is reached, are more distinctly judi-
cial or executive.   Such provisions have been a part of the statute
law of England and of the American states for a century, and we
shall at present confine our effort to ascertaining, if possible, how
such provisions have usually been construed with respect to the
exercise of the power of removal summarily, and without notice
to the officer proceeded against, and, if we find that any particular
construction or meaning has with great uniformity been given
to such statutes, it will be entirely fair and reasonable to conclude
that our own legislature enacted this law intending and expecting
that it would and ought to be so construed.  The history of judicial
proceedings in England affords numerous examples of the at-
tempted exercise of this power of removal in an *ex parte* manner.
The Ramshay Case, 18 Q. B. 173, was one in which the lord chan-
cellor undertook to summarily remove a judge of a county court
under a statute authorizing him to make such removal for in-
ability or misbehavior.  The court, by Lord CAMPBELL, C. J., said:
"The chancellor has authority to remove a judge of a county court
only on the implied condition, prescribed by the principles of eter-

nal justice, that he hears the party accused." · The case of Queen v. Archbishop of Canterbury, 1 El. & El. 545, arose under an act of parliament providing that a curate whose license had been revoked by the bishop might appeal to the archbishop; who should confirm or annul such revocation as to him should appear just and proper. An appeal was taken to the archbishop, who, without giving the appellant an opportunity to be heard, confirmed the revocation. The court said: "No doubt the bishop acted most conscientiously, and with a sincere desire to promote the interests of the church, but we all think he has taken an erroneous view of the law. He was bound to hear the appellant, and he has not heard him. It is one of the first principles of justice that no man should be condemned without being heard." In Williams v. Bagot, 3 Barn. & C. 785, Mr. Justice BAYLEY said: "It is contrary to common justice that a party should be concluded unheard." Capel v. Child, 2 Cromp & J. 558, is in the same line. The court said: "A party has a right to be heard, for the purpose of explaining his conduct." The same views are expressed in Baggs' Case, 11 Coke, 98, and in Gaskin's Case, 8 Term Rep. 209. In this country, while the adjudications of the courts have not been absolutely uniform, they clearly preponderate in the same direction as the English authorities already noticed. In his work on Municipal Corporations, (volume 1, 4th Ed., § 250,) Judge Dillon expresses the following opinion: "When an officer is appointed during pleasure, or where the power of removal is discretionary, the power to remove may be exercised without notice or hearing. But when the appointment is during good behavior, or where the removal can only be for certain specified causes, the power of removal cannot   *   *   *   be exercised unless there be a formulated charge against the officer, notice to him of the accusation, and a hearing of the evidence in support of the charge, and an opportunity given to the party of making defense."

In the early case of Page v. Hardin, 8 B. Mon. 648, where the governor of Kentucky undertook to decide that the secretary of state had abandoned his office, the tenure of which was good behavior during the term for which he was appointed, and commissioned another person in his place, no notice was given to Har-

din, the incumbent, previous to the action of the governor. Chief Justice MARSHALL, in delivering the opinion of the court, said: "The secretary being removable for breach of good behavior only, the ascertainment of the breach must precede the removal. In other words, the officer must be convicted of misbehavior in office, and we shall not argue to prove that, in a government of laws, a conviction whereby an individual may be deprived of valuable rights and interests, and may moreover be seriously affected in his good name and standing, implies a charge, and trial and judgment, with the opportunity of defense and proof." In Com. v. Slifer, 25 Pa. St. 23, an adjutant general had been appointed for a specified term, subject, however, to a statute providing that "whenever, in the opinion of the governor, the adjutant general fails and neglects faithfully to perform the duties of his office, the governor shall remove him from office." During such term the governor appointed another to the office, and this action was an application by the first appointee for a *mandamus* to compel payment of his salary. No notice was given to him of any claimed neglect of duty prior to the appointment of his successor, and the court said: "We are unwilling to believe the governor intended without cause to remove an officer appointed for a term of years, before the term had expired. That he possessed the power of removal is conceded, but the power is to be exercised upon cause shown. It exists only where the officer 'fails and neglects faithfully to perform the duties of his office.' It is true that the executive is made the judge, and that his opinion or judgment is conclusive as far as relates to the question of removal. But that judgment is not to be pronounced without notice, without any charge or specification, and without any opportunity given to the officer to make his defense. The reputation and the right of the incumbent to the office for the term specified in his commission are involved, and he has a right to know the accusation, and to be heard in his defense." The same court reiterated the same rule as to necessity for notice, where the removal could only be made for cause, in Field v. Com., 32 Pa. St. 478. In State v. City of St. Louis, 90 Mo. 19, 1 S. W. Rep. 757, the general rule as to removal of public officers is thus stated: "Where an officer is appointed during pleasure, or where

13 S D

the power of removal is discretionary, the power to remove may be exercised without notice or hearing. But where the appointment is during good behavior, or where the removal must be for cause, the power of removal can only be exercised when charges are made against the accused, and after notice, with a reasonable opportunity to be heard before the officer or body having the power to remove." And again, in the same opinion, the court says: "When the removal is not discretionary, but must be for a cause, as is the case here, and nothing is said as to the procedure, a specification of the charges, notice, and an opportunity to be heard are essential." Dullam v. Willson, (Mich.) 19 N. W. Rep. 112, was a case where the governor undertook to summarily remove without notice one of the trustees of the state institution for educating the deaf and dumb, on the ground of official misconduct and habitual neglect of duty as stated in a paper filed with the secretary of state, and served on such officer after such removal. A statute authorized the governor to remove certain officers, including the one involved, for "official misconduct, or habitual or willful neglect of duty." The constitution of the state also imposed upon the governor the duty of examining into the condition and administration of public officers, and authorized him to remove any such officer for gross neglect of duty, or for corrupt conduct in office, or other misfeasance or malfeasance therein. The question was whether the governor had legally exercised the power of removal. While the court held that the power of determining whether any of the specified causes of removal existed or not was judicial in its nature, still such power properly belonged to and might be exercised by the governor because expressly conferred upon him by the constitution; but it was further distinctly held that such power could not be properly exercised, without notice to the officer to be proceeded against, and an opportunity given him to be heard in his defense. The court said: "Unless it is the manifest intention of the section under consideration that the proceedings should be *ex parte*, as well as summary, a removal without charges, notice, and an opportunity for defense, could not be upheld.  *  *  *  The officer is entitled to know the particular acts and neglect of duty, or corrupt conduct,

or other acts relied upon as constituting malfeasance or mis-
feasance in office. And he is entitled to a reasonable notice of the
place and time when an opportunity will be given him for a hear-
ing, and he has a right to produce proof on such hearing." Ham
v. Board, 142 Mass. 90, 7 N. E. Rep. 540, declares the same rule.
Under a statute authorizing the board of police to remove any
officer or member of the department for cause, the court held that
such power could not be exercised by the board without assign-
ing a cause for such removal, and giving to such officer or mem-
ber an opportunity to be heard thereon. The court granted the
*mandamus* restoring the petitioner to office, on the ground that
"he was improperly removed, no hearing having been accorded
him." In the recent case of Alderman v. Darrow, 13 Colo. 460, 22
Pac. Rep. 784, the court held that, where an alderman had been
elected for two years, and had qualified, the board of aldermen,
which by law was made the sole judge of the qualifications of its
members, could not remove such incumbent from office, upon the
ground of disqualification, without notice to him, and an oppor-
tunity afforded him to make defense against such charge. The
same rule, requiring notice and investigation preliminary to the
valid exercise of the power of removal for cause, was maintained
or recognized in the following cases: State v. Bryce, 7 Ohio, pt.
2, 82; Carter v. City Council, (Colo.) 27 Pac. Rep. 1057; Hallgren
v. Campbell, 82 Mich. 255, 46 N. W. Rep. 381; Murdock v. Trustees,
12 Pick. 243.

It will be observed, from examination of these cases, that the
importance of notice and opportunity to defend does not at all de-
pend upon whether the power of removal is regarded as judicial
or executive. Notice is declared to be essential by courts holding
either view. In Biggs v. McBride, (Or.) 21 Pac. Rep. 878, the
court declined to decide whether such power was judicial or ex-
ecutive, but said: "It is believed under either view, and by whom-
soever the power of removal for cause may be exercised, it must
be done on notice to the delinquent of the particular charges
against him, and an opportunity given him to be heard in his de-
fense." While the courts of Illinois, and possibly other states,
have not concurred in this rule, but held that, in the absence of

any procedure prescribed by statute, the removal may be summary and *ex parte*, we are satisfied the weight of authority is in favor of the right of the incumbent holding office for a definite term, but subject to removal for cause, to be notified of proceedings for his removal, of the cause assigned therefor, and to have an opportunity for defense. The constitution fixes the term of office of the trustee in this case at five years, subject only to the condition that he is removable for certain specified causes enumerated in section 4, art. 16; and when section 5, c. 6, of the laws of 1890, authorizes the board of regents to remove trustees for "sufficient cause," it must be understood that "sufficient cause" means one or more of the causes so enumerated in the constitutional provision referred to. It being admitted in this case that no notice or information was given relator by which he could then, or can even now, know whether the reasons for his removal were such as might legally be considered "sufficient cause," and no opportunity given him to disprove or explain what might otherwise appear to be sufficient cause, but that the action of the board of regents was entirely *ex parte*, we hold such action invalid and void, and that the relator is entitled to a peremptory writ of *mandamus* as prayed for.

This conclusion, of course, disposes of this case; but we are asked by both sides to express an opinion upon petitioner's second proposition, that the act of the legislature authorizing the board of regents to remove trustees for cause is in conflict with the constitution, and that removals can only be made by impeachment and trial thereunder. With reference to impeachment, the constitution (article 16, § 3) provides that "the governor, and all other state and judicial officers, except county judges, justices of the peace, and police magistrates, shall be liable to impeachment," etc.; and section 4: "All officers not liable to impeachment shall be subject to removal for misconduct * * * or gross incompetency, in such manner as may be provided by law." Is a member of the board of trustees of one of the educational institutions of the state a "state officer," within the meaning of section 3, so that he is only removable by impeachment and trial by the senate? We think not. We are of the opinion that the term "state

officers," as used in said section, includes only such general officers as immediately belong to one of the three constituent branches of the state government. "Impeachment in the United States, being a matter of constitutional provision, (repeated in the constitutions of all the states,) is held to apply not only to the chief executive magistrate, but to other civil officers. In relation to the last named, however, it has never been extended to any not belonging to one of the three constitutional departments." Ord. Const. Leg. 443. The constitutions of many of the states contain the same language as our own, defining what officers are subject to impeachment, but, so far as we have observed, such language has not been taken to include officers who hold by appointment either by the governor or some supervising board, authorized to make such selection and appointment. For instance, the constitution of Iowa makes "the governor, judges of the supreme and district courts, and other state officers" liable to removal by impeachment; and then provides, as does ours, that "all other civil officers" may be tried and removed in such manner as the general assembly may provide. Their statute then provides that the state penitentiary shall be governed by a warden, elected by joint ballot of the general assembly, and fixes his term of office at two years. Now, no reason is readily apparent that would make one of a board of trustees, selected and appointed by the board of regents, a state officer, that would not make the warden of the penitentiary, selected and appointed by ballot, in the state legislature, a state officer; and yet the warden is not regarded by the lawmaking department of Iowa as a "state officer," within the meaning of the constitutional article on impeachment, for it is expressly provided by statute that the governor may remove him for official misfeasance or malfeasance. Similar conditions exist in other states, demonstrating the fact that trustees or superintending officers of state institutions, receiving their office not directly from the people, but by appointment from other officers or boards for subordinate administrative purposes, are not understood to be included in the term "state officers," as used in the constitutional article on impeachment. We think this view is both reasonable and fortunate. In nearly every state constitution, as in the federal con-

stitution, the causes for which a public officer may be impeached are criminal offenses only. This may be as far as it is prudent to go in the case of the heads of distinct departments of the government, but, in the case of subordinate administrative officers, the understanding has been very general, judging from the legislation of the different states, which appears to have been unchallenged, where provisions respecting impeachment are like our own, that it is not only wise, but allowable under such constitutional provisions, to make such officers removable for incompetency, and perhaps other causes not constituting criminal offenses. Whether the power to remove is essentially judicial or executive in its nature was not discussed by counsel, nor do we express any opinion upon that question generally. It would seem, however, that such question could not be practically important in this case, for the reason that the constitution itself, by which alone it must be determined when and by whom either the judicial or executive power may be exercised, has expressly committed to the legislature the whole subject of the removal of all officers not liable to impeachment. Section 4, art. 16. Acting under this general authority, the legislature has provided for the removal of such officers, and it could not well be objected that in so doing judicial functions had been committed to nonjudicial officers, for the constitution has expressly authorized it, if the legislature in its judgment shall so provide. The power of the legislature to provide in what manner nonimpeachable officers may be removed is plenary, and is just as definitely and authoritatively announced as is the division of the aggregate powers of the state into judicial, executive, and legislative, and their distribution among different officers and agencies of the state for execution. All of these constitutional provisions must be construed together, and each is qualified by the other. Let the peremptory writ of *mandamus* issue as asked for by relator. All the judges concurring.