Thomson, J.
This proceeding was brought to try the title to the office of inspector of coal mines for the state of Colorado, to which the relator claims to be rightfully entitled; but which, as he alleges, the defendant has usurped, and now unlawfully holds. A demurrer to the complaint was sustained; and, the relator declining to amend, judgment was entered against him.
The complaint alleges the appointment of the relator by *338 the governor to the office of inspector of coal mines for the state of Colorado; the confirmation of the appointment by the senate on the same day; and the subsequent qualification and entry into the possession of the office by the relator. It also avers that on the 9th day of February, 1900, the governor addressed and caused to be delivered to the relator a communication, which, after enumerating certain acts and omissions of the relator, not in keeping with a proper discharge of his official duties, and notifying him that these constituted neglect of duty and malfeasance in office, concluded with an order- revoking and annulling his commission as inspector of coal mines, and relieving him of his office; that on the last named day, the governor, by another order, appointed the defendant, Henry Denman, inspector of coal mines for the relator’s unexpired term, and on the 12th day of the same month, notified the secretary of state that he had removed the relator, and appointed the defendant; and that on the following day, the defendant filed his bond, took the oath required by law, and forcibly took possession of the office, with the books, papers and other things pertaining thereto, excluding the relator therefrom, which possession he continues to hold.
By an act of the legislature, approved February 24,1883, it was provided that within four months of the passage of the act, the judges of the district court should appoint four reputable coal miners of known experience and practice at the time, and the governor should appoint one mining engineer of like repute, experience arid practice at the time, and that these persons so appointed should constitute a board of five examiners, whose duty it should be to inquire into the character and qualifications of candidates for the office of inspector of mines ; that they should certify to the governor, and file in the office of the secretary of state, the names of all such applicants as any four of the examiners should find competent to fill the office, and that the governor should, from the names so certified, appoint the person possessing the best qualifications to be inspector of coal mines, whose commission should be for the term expiring January 1,1887, or until his *339 successor should be appointed and confirmed by the senate. The act also provided that every four years from January 1, 1883, examiners should be appointed in the same manner, and perform the same duties, and from the names submitted by them, the governor should appoint inspectors of mines. Gen. Stat. p. 167. On the 8th day of April, 1885, an act amendatory of the foregoing act was approved, in which the provisions relating to the appointment of inspector of coal mines were displaced by the following: “On January 1st, A. D. 1887, and every four years thereafter, the governor shall appoint one reputable mining engineer, of known ability, and shall notify the judges of four of the judicial districts of the state, within which coal mines are being operated, to each appoint one reputable coal miner, of known experience and practice, from their respective districts, and the five so appointed shall constitute a new board of examiners, whose duties, term of service, and compensation, shall be the same as those provided for by this section; and from the names that may be certified by them the governor shall appoint the inspector of mines provided for in this act.” The following provision was also incorporated into the amendatory statute: “ As often as vacancies in said office of inspector of mines shall occur, by death, resignation, or malfeasance in office, which shall be determined in the same manner as in the case -of any other officer of the state government, the governor shall fill the same, by appointment, for the unexpired term, from the names on file in the office of the secretary of state, as' hereinbefore mentioned as having passed examination.” Session Laws, 1885, p. 142.
The amendatory act provides for the filling of vacancies occasioned by “ death, resignation or malfeasance in office.” Ipso facto, death or resignation creates a vacancy in office, but malfeasance does not. While a vacancy occurs by death or resignation, it does not occur by malfeasance without more. Some action is necessary to make the malfeasance operative. Death and resignation determine themselves,— not so malfeasance. The words, “ which shall be determined *340 in the same manner as in the case of any other officer of the state government,” following the mention of death, resignation and malfeasance in office, can, therefore, have reference only to malfeasance in office ; and by a vacancy occasioned by malfeasance, is meant a vacancy which follows a removal for malfeasance.
The term of office of the inspector of mines is not fixed either by the original act, or by the statute amending it; and the amendatory act, while, inferentially, it contemplates a removal, makes no provision as to the mode of removal. The malfeasance is to be determined in the same manner as in the case of any other officer of the state government; but as to what shall follow the determination, the statute is silent. In this connection, the following provision contained in an act of the legislature, approved March 23, 1885, assumes a controlling importance : “ The term of office of all state officers hereafter appointed by the governor, except those whose terms of office are otherwise fixed by law, shall commence on the first Wednesday of April next after their appointment, and shall continue for the term of two years, subject to the right of the governor, at any time, to remove such incumbents for incompetency, neglect of duty, or malfeasance in office.” Session Laws, 1885, p. 330. It is true that the act of 1883 provided that the inspector appointed pursuant to its requirements should hold his office until January 1, 1887. A period was thus fixed for the expiration of the term of office of the inspector first appointed; but the provision was applicable only to him. On January 1, 1887, the time of expiration of his term, and every four years afterwards, it was, by the amended statute, the duty of the governor to see that examiners were selected, and to make the appointment of inspector from the names certified by them; but we find no language to indicate that the term of the inspector was in any manner dependent upon the term of the examiners. They were required to file the names of the persons certified to the governor in the office of secretary of state, and from those names the governor could make an *341 appointment every two years, as well as every four years. Certainly, if the legislature had intended that the inspector should have a term of office different from that provided for state officers by the act of March 23, 1885, it would have given some definite indication of its purpose.
The term of office of the inspector, not being otherwise fixed by law, is fixed by the act last mentioned ; and the relator was entitled to the enjoyment of his office for two years from the first "Wednesday of April next after his appointment, subject to the right of the governor to remove him for cause. As it is this statute by which the relator’s term of office was fixed, and as it is this statute which invested the governor with the power to remove him, it is this statute by which the unnecessary expression, “ which shall be determined in the same manner as in the ease of any other officer of the state government,” must be interpreted. By the terms of this statute, the relator was removable by the governor; and malfeasance in office was a sufficient ground for the removal. Where the power to remove is discretionary, it may be exercised without notice or hearing, and it is always discretionary where the reason for its exercise is left to the judgment of the officer or body effecting the removal. Aldermen v. Darrow, 13 Colo. 460; Trimble v. People, 19 Colo. 187 ; O’Dowd v. Boston, 149 Mass. 443; State v. St. Louis, 90 Mo. 19; People v. Carver, 5 Colo. App. 156. But where removal from office is allowable only for a specified cause, the power of amotion cannot be exercised summarily. In such case an ex parte judgment of removal is void. The officer whose removal is sought, is entitled to an investigation of the charges against him. To such investigation a hearing is necessary, and he must be afforded an opportunity to make his defense. Aldermen v. Darrow, supra; State v. St. Louis, supra; People v. Carver, supra; Dullam v. Willson, 53 Mich. 392; Andrews v. King, 77 Me. 224; Benson v. People, 10 Colo. App. 175.
By the terms of the statute the relator was removable only for a specified cause. Neglect of duty and malfeasance in *342 office were the grounds alleged in the governor's order. Either, if established, was sufficient to warrant the judgment, but it could not he established except by a hearing, and there could he no valid hearing without notice to the relator of its time and place, and of the offense charged against him. According to the statements of the complaint, which, for the purposes of this opinion must be accepted as true, the judgment of removal was rendered ex parte. It was, therefore, void. The complaint was sufficient, and the judgment is reversed.

Reversed.