## DARROW v. THE PEOPLE.

1. A general law unlimited as to time in its operation is not obnoxious to a constitutional inhibition against local legislation because it happens that but one city in the state has the population necessary to come within its purview.
2. The superior court of Denver is not of the same class or grade as the district courts of the state, within the meaning of the constitution. Section 1 of article 6 of the constitution authorizes the creation of the superior court of Denver.
3. The statute designating the payment of taxes as a necessary qualification of membership in the board of aldermen is not in conflict with section 6, article 7, of the constitution.
4. A statute declaring that the board of aldermen shall be the *sole* judge of the qualification, election and returns of its own members deprives the courts of all jurisdiction over the subjects mentioned.
5. The question of prior disability, like that of subsequent malconduct on the part of an alderman, may be investigated at any time during his term of office. It is the duty of the board to investigate such question whenever properly presented. If no ordinance or rules have been adopted providing a method for conducting such investigation, they may be supplied.
6. If the council refuse at the proper time to pass an ordinance for the canvass of votes, the passage of such ordinance, if it be a duty enjoined by law, may be coerced by *mandamus.*
7. If one receive a majority of the legal votes cast, is declared by the proper canvassing board duly elected, is inducted into the office, and proceeds with the performance of his official duties, until the disability is adjudged by a proper tribunal he is a *de facto* officer, and his acts performed in the discharge of his official duties are valid and binding.
8. One who is a freeholder and tax payer within the city of Denver has such an interest as entitles him to act as relator in proceedings by *quo warranto* against an alderman.

*Appeal from Superior Court of the City of Denver.*

THE facts are stated in the opinion.

Mr. CHARLES H. McCORD, for appellant.

Mr. F. W. HANKEY, for appellees.

HELM, J. The information in this case charges respondent with having wrongfully and unlawfully usurped and intruded into the office of alderman of the city of Denver. It is averred therein that, at the time of his election and induction into office, he was disqualified from holding that position, or performing the duties thereof, by reason of having paid no taxes in said city during the year previous. A general demurrer was filed to the information, which the superior court overruled, and respondent declining to plead further, a judgment of ouster was duly pronounced. An appeal from this judgment brings the proceedings before us for review.

The record and the assignments of error present three important questions for adjudication. The first of these questions attacks the legal existence of the superior court upon constitutional grounds. It is urged that the law (chapter 103, Gen. Stat.) through which that court derives its existence was designed for the city of Denver alone, and hence is obnoxious to section 25, article 5, of the constitution, prohibiting local or special legislation. Several cases are cited which, at first, may seem to support counsel's position, but in no instance is the statute which is held invalid exactly similar in the particular mentioned to the act before us.

If this act were a clear and unequivocal attempt to evade the constitutional inhibition, and create a superior court for one particular city, we would unhesitatingly accede to the views of counsel. Such legislation, although the purpose be disguised by the use of general language, is not to be tolerated. But, construing all the provisions of the statute together, we cannot discover any such attempted evasion. Denver, it is true, is the only city to which the act at present applies. But the legislature clearly intended to provide for places that may hereafter acquire the population mentioned. The law is general, and is unlimited as to time in its operation. There is nothing unreasonable in the supposition that

other towns and cities within the state will eventually contain twenty-five thousand inhabitants. Whenever this size is attained by such municipal corporations, the act becomes applicable thereto. This objection of counsel is, in our judgment, not well taken.

Nor is their proposition that the statute is obnoxious to sections 14 and 28, article 6, of the constitution, any more tenable. The superior court has no original criminal jurisdiction whatever; its authority is confined territorially to the corporate limits of the city in which it exists; it may entertain appeals from justices of the peace in cases relating to the violation of city ordinances. Hence it appears that, aside from its territorial limitations, the superior court is denied authority possessed by the district court over a prominent and extensive branch of the law, while in an important class of cases it is given a jurisdiction withheld from the latter court. In these and other respects there is a radical difference between the two courts. The jurisdiction of the former is concurrent with that of the latter in so far as most of the matters upon which it may adjudicate are concerned; but the same is true of county courts as to civil cases not connected with the settlement of estates, where the debt sued for or the value of the property involved does not exceed $2,000; yet it cannot be claimed that on this account alone these courts are of the same grade as the district court. The fact that procedure in the superior court is in most respects similar to that prescribed for district courts has no special significance. Supposing the legislature had expressly enacted that procedure before the county court should, with certain specified exceptions, be the same as in the district court, would the county court thereby become a district court? Or would it be contended that this made them courts of the same class, within the meaning of the constitution?

In holding, as we do, that the superior court, as created by the law now before us, is not a district court

nor a court of the same class or grade, we answer the objections resting upon both of the constitutional provisions last above mentioned.

We think that the constitutional authority for creating courts in cities and incorporated towns, as given by section 1 of said article, is neither interpreted nor limited, as counsel seem to believe, by section 26 thereof, relating to police magistrates; and we hold that section 1 authorizes the establishment of the court in question.

The second objection presented for consideration challenges the constitutionality of the statutory provision under which this proceeding was instituted. It is asserted that the legislature could not declare the payment of taxes a necessary qualification for membership in the board of aldermen. Counsel argue that section 6, article 7, of the constitution, which provides that "no person, except a qualified elector, shall be elected or appointed to any civil or military office in the state," by implication inhibits the legislature from adding the property qualification under consideration. There is nothing in the constitution which expressly designates the qualifications of councilmen in a city or town, and this section contains the only language that can possibly be construed as applicable thereto. But it will be observed that the language used is negative in form; that it simply prohibits the election or appointment to office of one *not* a qualified elector. There is no conflict between it and the statute. By providing that a supervisor or an alderman shall be a tax payer, the legislature does not declare that he need not be an elector. Nor is the provision at all unreasonable; on the contrary, it is a safeguard of the highest importance to property owners within the corporation. The right to vote and the right to hold office must not be confused. Citizenship, and the requisite sex, age and residence, constitute the individual a legal voter; but other qualifications are absolutely essential to the efficient performance of the duties connected with almost every

office. And certainly, no doubtful implication should be favored for the purpose of denying the right to demand such additional qualifications as the nature of the particular office may reasonably require. We do not believe that the framers of the constitution, by this provision, intended to say that the right to vote should be the sole and exclusive test of eligibility to all civil offices, except as otherwise provided in the instrument itself; that no additional qualifications should ever be demanded, and no other disqualifications should be imposed. If, as has been well said, they "had intended to take away from the legislature the power to name disqualifications for office, other than the one named in the constitution, it would not have been left to the very doubtful implication which is claimed from the provision under consideration." *State v. Covington*, 29 Ohio St. 102.

The third and last question which we shall consider is, we think, fatal to the judgment below. The amended charter of Denver provides that the legislative power of the city shall be vested in a council, consisting of a board of aldermen and a board of supervisors. Section 3 of article 2 of said charter contains, *inter alia*, the following with reference to those bodies: "Each board shall be the *sole* judge of the qualifications, election and returns of its own members. * * *" Appellant contends that this provision clothes the tribunal designated with exclusive authority to inquire into the qualifications of aldermen; that it deprives the courts of all jurisdiction in the premises. The right of courts possessing general and original jurisdiction to inquire by *quo warranto* into the authority under which a person claims to exercise the privileges and perform the duties of an office is so well established that no doubtful language should be permitted to take it away. Accordingly, where the statute provides that the city council shall be the judge of the qualifications, election and returns of its own members, the power given is

declared to be simply cumulative, and the concurrent jurisdiction of the courts is maintained.

But, on the other hand, the doctrine is firmly established that if, in addition to the foregoing language, the word "sole" or "exclusive" or "final" is used, the courts are thereby divested of all jurisdiction over the subject. It is said that when the legislature declares the council to be the sole judge of the qualifications, etc., of its own members, the intent is too clear to admit of doubt; the use of the word "sole" settles the question beyond a possibility of cavil, and there is no room for judicial construction. The constitutional provision, section 1 of article 6, which enacts that the judicial power of the state shall be vested in certain courts, in our opinion does not affect the foregoing conclusions. See McCrary, Elec. § 295, and cases cited; 1 Dill. Mun. Corp. (3d ed.) §§ 200, 202, and cases cited.

The reason given for lodging this exclusive power with the city council is that the terms of office are usually short, and a proceeding through the courts is not sufficiently expeditious to meet the reasonable demands of the situation. But, as already intimated, there being no room for interpretation, we are not concerned with the reasons which may have operated upon the legislative mind in the premises. Whether the doctrine be wise or unwise, it is sufficient for us to say that *thus it is written*. If abuses should ever arise under the law, relief must be obtained by application to the legislature.

It is apparent that the foregoing conclusions are adverse to the claim of jurisdiction in the superior court to investigate the question of appellant's disability. It follows that we must hold the proceeding erroneous unless it appears that for some reason the statute under consideration does not affect this particular case. To avoid the difficulty, counsel for appellee contend: *First*, that this being the first city council elected after the adoption of

the law, and the statute providing that the vote for its members should be canvassed by the outgoing board in the manner prescribed by existing ordinance, it was evidently the legislative intent to except the first board from the operation of this statutory provision. *Second*, they assert that, as the law requires the manner of making the canvass of votes cast for aldermen or supervisors to be prescribed by ordinance, the statutory provision under discussion is not self-enforcing; and since no such ordinance has been or could have been provided so as to affect the present council, the statute is inoperative, and the jurisdiction of the courts remains in so far as this case is concerned.

To both of these suggestions it must be answered that from the moment when the present council entered upon the discharge of its duties the provision relating to the qualifications of its members became operative; that in so far as this provision affects such qualifications it is continuous; and that the question of prior disability, like that of subsequent malconduct, may be investigated at any time during the term of office. It often happens that the particular fact which renders the party ineligible to hold a given position is unknown to the public until long after his election and induction into office. It is even true that sometimes such disability is not discovered by the candidate himself until he has for a considerable period been performing his official duties. An obligation rests upon the council, when the question is properly presented, to investigate the alleged disability, and, if it be proven, to oust the incumbent, though his term of office be about to expire. There is a marked difference between canvassing the vote and declaring the result of such canvass, and investigating a charge of prior disqualification which may afterwards be presented. While the present council cannot perform the former duty, they are certainly in a position to discharge the latter. If any rules or regulations are essential to a proper investiga-

tion of alleged disqualifications of aldermen, the same may be supplied.

We can discover no satisfactory reason for holding that the unequivocal legislative expression concerning the qualifications of councilmen may not be given effect as to the case at bar. Conceding that an ordinance pointing out the method for canvassing the votes and declaring the election of supervisors and aldermen is necessary, this fact does not, in our judgment, affect the particular question of disability now under consideration; for while provision may be made for the investigation of such questions as this at the time the vote is canvassed, there must of necessity exist the right to make such inquiry at a period subsequent thereto.

To one of the arguments made we reply that if the city council neglect or refuse at the proper time to pass an ordinance providing for the canvass of votes, and the passage of such ordinance be a duty enjoined by law, the courts will have power by *mandamus* to compel that body to act. This, however, would be a very different proceeding from *quo warranto* to oust an incumbent on the ground of prior disability. The former would put in motion, *i. e.*, compel, the council to act as the law directs. The latter would destroy the exclusive character of their jurisdiction to investigate the subjects named, and would thus be a clear violation of the statute.

We cannot agree with counsel in their assertion that where one is disabled from legally performing the duties of a public office his election thereto is an absolute nullity. The better doctrine is that if such an one receives a majority of the legal votes cast, is declared by the proper canvassing board duly elected, is inducted into the office, and proceeds with the performance of the duties existing in connection therewith, until the disability is adjudged by a proper tribunal he is a *de facto* officer, and his acts performed in the discharge of his official duties are valid and binding. The rule established in this

country by a strong preponderance of authority is that the votes cast for such person are not to be entirely ignored; that his opponent who has received a *minority* of the legal votes polled shall not, upon ouster of the disabled candidate, be inducted into the office. In such cases a vacancy is to be declared, and a new election ordered to fill the same. *State v. Anderson*, 1 N. J. Law, 318; *State v. Smith*, 14 Wis. 497; *Saunders v. Haynes*, 13 Cal. 145.

We have not discussed the objection that Norris is incompetent to act as relator in this proceeding. Our statute on the subject (section 315 of the Civil Code) seems to have been complied with. The district attorney of the proper district subscribes to the information, and presents the same. This fact implies that that officer has fully investigated the merits of the case, and that the proceeding, though at the relation of a private party, is instituted upon sufficient grounds and in good faith. If, however, such action of the district attorney were not conclusive, and if, under the statute, it were necessary that Norris should have some special interest in the matter, we still deem the information sufficient. It is therein averred that Norris is, and has been for two years, a freeholder and tax payer in the city of Denver. Since the council have authority by law to levy taxes upon relator's property, he has surely a special interest in the character and composition of that body,— an interest not possessed by hundreds of citizens and voters residing within the city. We would, upon these grounds, if necessary, sustain his right to have presented the information, had the district attorney neglected or refused to act in the premises.

For reasons above given, in discussing the third objection, we think the demurrer in this case should have been sustained. The judgment of the court below is accordingly reversed.

*Reversed.*