[No. 7848. Decided February 6, 1909.]

THE STATE OF WASHINGTON, *on the Relation of Charles E. Coon, Plaintiff,* v. M. E. HAY, *Respondent.*[1]

ELECTIONS—NOMINATIONS — PRIMARY ELECTIONS — DISQUALIFICA-
TION OF CANDIDATE—ADVERTISING—STATUTES—CONSTRUCTION. Laws
1907, p. 472, § 28, disqualifying any candidate for office who pays for
"any article or published statement in a newspaper wherein the
electors are advised or counseled to vote for such candidate, or his
fitness or qualifications for office are set forth, or his photograph or
biography is published" does ·not disqualify one who paid for the
publication of his photograph, over a statement of his name and
candidacy, and marked "Paid Advertisement"; in view of the sever-
ity of the penalty and of the obscurity in this and the next section,
wherein it is made a misdemeanor for publishers of newspapers to
publish for pay, articles advocating a candidacy, except when appear-
ing and designated as a "Paid Advertisement;" and since the same is
not an article or published statement wherein the electors are ad-
vised to vote for him or wherein his fitness is discussed (RUDKIN,
C. J., FULLERTON, and CHADWICK, JJ., dissenting).

Application for a writ of *quo warranto* to the Lieutenant
Governor, filed in the supreme court January 13, 1909, heard
upon demurrer to the petition. Writ denied.

*Reynolds, Ballinger & Hutson,* for relator, contended that
an information in the nature of *quo warranto* is the proper
method by which to try title to public office. Bal. Code,
§ 5780 *et seq; State ex rel. Heilbron v. Van Brocklin,* 8 Wash.
557, 36 Pac. 495 ; *People ex rel. Barton v. Londoner,* 13 Colo.
303, 22 Pac. 764, 6 L. R. A. 444; 10 Am. & Eng. Ency.
Law (2d ed.), 798. The clause in art 3, § 4, of the constitu-
tion providing that "contested elections for office shall be
decided by the legislature in such manner as shall be decided
by law" is not self-executing, since no such law has been en-
acted. *Western American Co. v. St. Ann Co.,* 22 Wash. 158,
60 Pac. 158; *Northwestern Warehouse Co. v. Oregon R. &*

[1]Reported in 99 Pac. 748.

*Nav. Co.*, 32 Wash. 218, 73 Pac. 388; 8 Cyc. 752-3, and notes; *People ex rel. Barton v. Londoner, supra.* The conflict between the claims of Coon and Hay is not a contest within the meaning of that clause, but refers to contests between candidates at an election involving the respective numbers of votes received by each. 15 Cyc. 396; *Magruder v. Swann,* 25 Md. 173, 204; *People ex rel. Barton v. Londoner, supra.* Conceding the application of § 4, article 3, of the state constitution, it furnishes an accumulative remedy only. 17 Ency. Plead & Prac., 423-4, 825-6; 10 Am. & Eng. Ency. Law (2d ed.), p. 800; 15 Cyc. 395-6, and cases cited; McCrary, Elections (4th ed.), §§ 380, 382; 2 Spelling, Extraordinary Remedies (2d ed.), 1776; Throop, Public Officers, § 397; *State ex rel. Blake v. Morris,* 14 Wash. 262, 44 Pac. 266; *State ex rel. Hyland v. Peter,* 21 Wash. 243, 57 Pac. 814; *State ex rel. Thayer v. Boyd,* 31 Neb. 682, 48 N. W. 739, 51 N. W. 602; *People ex rel. Barton v. Londoner, supra; People ex rel. Swift v. Bingham,* 82 Cal. 238, 22 Pac. 1039; *People ex rel. Hatzel. v. Hall,* 80 N. Y. 117; *McVeany v. Mayor etc. of New York,* 80 N. Y. 185, 36 Am. Rep. 600; *State v. Gates,* 35 Minn. 385, 28 N. W. 927; *State v. Kempf,* 69 Wis. 470, 34 N. W. 226, 2 Am. St. 753. The only exception to this rule is found in the exclusive right of each house of the legislature to judge the qualifications and elections of its own members. This is an exception arising from public policy. Throop, Public Officers, § 397. A lieutenant governor is not a member of the senate. The constitution prescribes the membership. Const., art. 2, §§ 1, 2, 6, 7. "Legislature" and "law making power" are not identical. The latter includes governor, the former does not. *Brooks v. Fischer,* 79 Cal. 173, 21 Pac. 652, 4 L. R. A. 429. The legislature has concurrent jurisdiction with the supreme court in *quo warranto* proceedings, and the tribunal first assuming jurisdiction holds it. *McVeany v. Mayor etc. of New York, supra.* The terms "legally qualified" and "eligible" are synonymous. *Kirkpatrick v. Brownfield,* 97 Ky. 558, 31 S.

W. 137, 53 Am. St. 422, 29 L. R. A. 703.   If the candidate
receiving the highest number of votes is ineligible, there is no
election.    15 Cyc. 391; Throop, Public Officers, §§ 160-3;
McCrary, Elections (4th ed.), §§ 327, 329, 330, 349; *State
ex rel. Goodell v. McGeary*, 69 Vt. 461, 38 Atl. 165, 44 L.
R. A. 446; *State ex rel. Thayer v. Boyd, supra.*   The election
of an ineligible person is void and confers no right to office.
23 Am. & Eng. Ency. Law (2d ed.), 338.   The relator has
sufficient interest in the office to warrant the maintenance by
him of a proceeding to contest the eligibility of his successor.
15 Cyc. 403-4; Bal. Code, § 5780 *et seq.; Taylor v. Sullivan*,
45 Minn. 309, 47 N. W. 802, 22 Am. St. 729, 11 L. R. A.
272; *State ex rel. Thayer v. Boyd, supra; Roane v. Matthews*,
75 Miss. 94.   The certificate of the canvassing board is *prima
facie* proof of claimant's election and eligibility, and he
thereby becomes a *de facto* officer and is entitled to assume
and hold the office until his ineligibility is determined.   *State
ex rel. King v. Trimbell,* 12 Wash. 440, 41 Pac. 183.   But
such certificate is only *prima facie* proof and may be over-
come in *quo warranto* proceedings by proof of ineligibility.
2 Spelling, Extraordinary Remedies (2d ed.), § 1876; Mc-
Crary, Elections (4th ed.), §§ 319, 418; *State ex rel. Blake
v. Morris* and *State ex rel. Hyland v. Peter, supra.*   The re-
turning officer cannot pass upon the eligibility of the candi-
date, but must declare the result from the returns placed in
his hands.    Mechem, Public Officers, §§ 207-9; McCrary,
Elections (4th ed.), §§ 263, 385, 411; Throop, Public Of-
ficers, § 156; 10 Am. & Eng. Ency. Law (2d ed.), 746-7,
and notes; 2 Spelling, Extraordinary Remedies (2d ed.),
§ 1563; *People ex rel. Sherwood v. State Board of Canvassers*,
129 N. Y. 360, 29 N. E. 345, 14 L. R. A. 646; *State ex rel.
King v. Trimbell*, 12 Wash. 440, 41 Pac. 183.   The legisla-
ture may prescribe reasonable qualifications for holding office.
*State ex rel. Thompson v. McAllister*, 38 W. Va. 485, 18 S.
E. 770, 24 L. R. A. 343; *Darrow v. People*, 8 Colo. 417, 8
Pac. 661; *State ex rel. Attorney General v. Covington*, 29

Ohio St. 102; Mechem, Public Officers, §§ 73-74. Although the legislature may not add to the constitutional qualifications imposed upon the voter in granting the right of suffrage, laws are upheld which disfranchise the voter for wilful violation of reasonable regulations of the exercise of the right of suffrage. *State ex rel. Orr v. Fawcett,* 17 Wash. 188, 49 Pac. 346; *Moyer v. Van de Vanter,* 12 Wash. 277, 41 Pac. 60, 50 Am. St. 900, 29 L. R. A. 670. Disqualification to hold office may be prescribed as a punishment for crime. *Barker v. People,* 3 Cowen 686, 704 *et seq.* Section 28 of the primary law does not infringe constitutional provisions guaranteeing the liberty of the press. 8 Cyc. 892. The *quo warranto* proceeding may be brought by a private individual without permission of court. Bal. Code, § 5780 *et seq; Mills v. State ex rel. Smith,* 2 Wash. 566, 27 Pac. 560; *State ex rel. Attorney General v. Seattle Gas & Elec. Co.,* 28 Wash. 488, 68 Pac. 946, 70 Pac. 114. It cannot be instituted until the commencement of the term and some intrusion by the defendant; but taking office is such intrusion. 10 Am. & Eng. Ency. Law (2d ed.), 798; 2 Spelling, Extraordinary Remedies (2d ed.), § 1784; 17 Ency. Plead. & Prac., 407, note 2; Mechem, Public Officers, § 482; Throop, Public Officers, § 784. Where the ineligibility arises from prior misfeasance, there need not be any previous prosecution therefor, as a prerequisite to the institution of *quo warranto,* but the fact of such misfeasance may be inquired into fully in such proceeding. 2 Spelling, Extraordinary Remedies (2d ed.), § 1789. The information is in the same form as an ordinary complaint except that it is entitled in the name of the state on the relation of the claimant. *State ex rel. Heilbron v. Van Brocklin,* and *State ex rel. Attorney General v. Seattle Gas & Elec. Co., supra.*

*Merritt, Oswald & Merritt,* for respondent, contended that the constitution gives the legislature exclusive jurisdiction to determine contests, the only contests provided for by statute being those relating to precinct and county officers.

*State ex rel. Fawcett v. Superior Court,* 14 Wash. 604, 45
Pac. 23, 33 L. R. A. 674; *Parmeter v. Bourne,* 8 Wash. 45,
35 Pac. 586, 757. Article 3, § 3, of the constitution provid-
ing that the lieutenant governor shall serve for a term of four
years and until his successor is elected and "qualified" was
intended to obviate any inconveniences that might attend va-
cancies occurring between the expiration of the term of the
incumbent and the qualification of his successor. *Stevens v.
Wyatt,* 55 Ky. 542. The title of the act is insufficient to in-
clude the disqualifying provisions contained in section 28 of
the primary law. *State ex rel. Nettleton v. Case,* 39 Wash.
177, 81 Pac. 554, 109 Am. St. 874, 1 L. R. A. (N. S.) 152;
*State v. Tieman,* 32 Wash. 294, 73 Pac. 375, 98 Am. St.
854; *State v. Poole,* 42 Wash. 192, 84 Pac. 727; *State ex
rel. Matson v. Superior Court,* 42 Wash. 491, 85 Pac. 264.

Mount, J.—This is an application to this court for a
writ of *quo warranto* to oust the respondent from the office
of lieutenant governor. The relator alleges, that the respond-
ent was elected to the office of lieutenant governor at the
general election held in November, 1908; that the votes were
canvassed by the legislature as required by law, and respond-
ent was declared duly elected, and on the second Monday of
January, 1909, he duly qualified and is now holding the said
office; that the respondent is incompetent to qualify or hold
that office by reason of the fact that, prior to the primary
election held on September 8, 1908, at which he was a candi-
date for the nomination of lieutenant governor on the re-
publican ticket, he solicited and caused certain named news-
papers to publish a statement consisting of the words " 'Paid
Advertisement,' followed by a photograph of said M. E.
Hay, said photograph being followed by the words 'M. E.
Hay, candidate for the republican nomination for the office
of lieutenant governor,' " and promised and agreed to pay,
and did pay, such newspapers for such publications.

Respondent in opposing the writ presents several constitu-

tional questions, which need not be considered, in view of the construction which we place upon the statute relating to primary elections. Section 28 of the primary election law, Laws of 1907, page 472, upon which the relator relies, provides:

"No person shall be competent to qualify for any public office, who shall have, prior to the holding of any primary election, paid, or promised or agreed to pay, either directly or through another, or in any manner whatsoever, to the owner, publisher, manager or representative of any newspaper, any sum of money or other thing of value, for any article or published statement in a newspaper, wherein the electors are advised or counseled to vote for such candidate, or his fitness or qualifications for office are set forth, or his photograph or biography is published."

The language here is somewhat involved, and is no doubt susceptible of the construction urged by the relator, to the effect that the mere publication of a photograph with a statement telling whose photograph it is disqualifies a candidate from holding office. It may also be construed as contended for by respondent, viz., as prohibiting payment for the publication of "Any article or published statement in a newspaper wherein the electors are advised or counseled to vote for such candidate or his fitness or qualifications for office are set forth, or his photograph or biography is published." In other words, the photograph must be published in connection with the *published article or statement* where the voters are advised to vote for such candidate or his fitness or qualification for office is set forth. We think this construction must be adopted. The mere statement whom the photograph represents is not such an article or statement as is prohibited by the provisions above named.

The penalty for violating this statute is severe. It should not attach unless the meaning of the language is plain and the violation is clear. The attorney general, whose duty it is to advise public officers, gave an opinion on April 18, 1908,

construing the section of the primary law under considera-
tion, in which opinion that officer said:

"That payment of money to a newspaper in the manner
and for the purpose specified above, to wit: Publication of
announcement of candidacy (with or without accompanying
photograph) over the signature of the candidate, but without
newspaper comment, does not render that candidate incom-
petent for public office." Report Attorney General, 1908,
p. 446, Opinion No. 343.

We do not cite this opinion as controlling upon this court,
but merely to show that § 28 does not clearly make the pub-
lication of a photograph a disqualification for office. It also
shows that the respondent acted in good faith. Under these
conditions, where the statute is construed by an officer whose
duty it is to advise public officers, and where persons advised
or with knowledge of such advice follow the same, the statute
should not be construed otherwise unless the language is
clear and unambiguous. The following section of the statute,
viz., § 29, makes it a misdemeanor for any newspaper or
other publication to accept money for advocating the election
or defeat of any candidate, and then provides:

"Nothing herein shall prevent any person or persons, firm
or corporation engaged in the publication of any newspaper,
magazine or periodical from receiving for publication and
publishing any matter, article or articles advocating the elec-
tion or defeat of any candidate or candidates and receiving
a consideration therefor, if such articles so published or print-
ed have placed at the beginning thereof in plain type of black-
faced Roman capitals in a conspicuous place, the statement
'Paid Advertisement.' But this section shall not be construed
as permitting the payment for any publication prohibited by
section 28 of this act."

The word "*publication*" here used refers clearly to the words
"article or published statement" used in § 28. The object
of § 29 is to prevent the newspapers named from advocating
for secret hire the election or defeat of any candidate, but
newspapers are authorized to openly sell their space where
the readers are advised of the fact that the matter used is

an advertisement merely.  The last clause of § 29 makes it clear that candidates themselves may not advocate their own election in newspapers by articles or statements which advise voters to vote for them, or where such articles set out their qualifications for office.  But we think these sections are not intended to disqualify a candidate who merely publishes his picture with the statement whom the picture represents.

With this construction of the statute, it is unnecessary to consider the other questions presented.  The writ must therefore be denied.

CROW, J., concurs.

DUNBAR, J. (concurring)—I concur for the reason that the statute is so cloudy and its meaning so uncertain that I do not think it would be just to impose so severe a penalty as the loss of office upon one who might chance to misinterpret its provisions.

GOSE, J., concurs with DUNBAR, J.

RUDKIN, C. J. (dissenting)—I regret my inability to agree with the conclusion announced by the majority of the court in this case, and the importance of the questions involved calls for, or at least justifies, a brief statement of the reasons for my non-concurrence. The opinions of the majority are based upon the ground that the direct primary law, so-called, does not prohibit the acts committed by the respondent, and does not render him incompetent to qualify for the office to which he has been elected; or, more properly speaking perhaps, upon the ground that the language of the act is so obscure and cloudy and the penalty so severe that a court should not enforce the penalty which follows as a matter of course upon its violation.  The only provisions of the act which have any special bearing upon the question under consideration are §§ 28 and 29, which read as follows:

"Sec. 28.  No person shall, in order to aid or promote his own nomination to a public office under the provisions of this act, or any amendment thereto, directly or indirectly, him-

self or through another person, give, pay, expend or contribute, or promise to give, pay, expend or contribute any money or other valuable thing, except for personal expenses. The words 'personal expenses,' as used in this act, shall include only expenses directly incurred and paid by a candidate for traveling and for purposes properly incidental to traveling, and for writing, printing and perparing for transmission any letter, circular or other publication not issued at regular intervals, whereby he states his position or views upon public or other questions; for stationery and postage, for telegraph, telephone and public messenger service, and for other similar expenses, and for the necessary expense of hiring halls or other rooms for the purpose of holding meetings to address the voters and others upon public questions and matters relating to his candidacy.

"No person shall be competent to qualify for any public office, who shall have, prior to the holding of any primary election, paid, or promised or agreed to pay, either directly or through another or in any manner whatsoever, to the owner, publisher, manager or representative of any newspaper, any sum of money or other thing of value, for any article or published statement in a newspaper wherein the electors are advised or counseled to vote for such candidate, or his fitness or qualifications for office are set forth, or his photograph or biography is published.

"Sec. 29.   It shall be unlawful for any owner, proprietor, editor, manager, officer, clerk, agent, reporter, or employee of any newspaper, magazine or periodical printed or published in this state, to take, accept, or receive, or agree to take, accept or receive, for himself or any other person, or persons, firm or corporation, either by himself or any other person, persons, firm or corporation, any money, gratuity or other valuable consideration or article of value for or on account of or as a consideration for such newspaper, magazine or other periodical supporting or advocating the election or defeat of any candidate or candidates at any primary election.   Any such owner, proprietor, editor, manager, officer, clerk, agent, reporter or employee of any newspaper, magazine or other periodical violating the provisions of this act shall be deemed guilty of a misdemeanor and shall be fined in any sum not less than $25 and not more than $500 or confined in the county jail not less than 10 days or more than six months or be pun-

ished by both such fine and imprisonment: *Provided, however,*
Nothing herein shall prevent any person or persons, firm or
corporation engaged in the publication of any newspaper,
magazine or periodical from receiving for publication and
publishing any matter, article or articles advocating the elec-
tion or defeat of any candidate or candidates and receiving
a consideration therefor, if such articles so published or print-
ed have placed at the beginning thereof in plain type of black-
faced Roman capitals in a conspicuous place, the statement
'PAID ADVERTISEMENT.' But this section shall not be,
construed as permitting the payment for any publication pro-
hibited by section twenty-eight of this act." Laws 1907,
pp. 472, 473.

The language of these sections may be somewhat involved,
as suggested in the majority opinions, but when the act is
read in its entirety and construed as a whole, its meaning is
plain and obvious. Section 28 declares in express terms that
no person shall be competent to qualify for a public office
who shall have paid to the owner or publisher of a newspaper
any sum of money for any article or published statement
wherein his photograph or biography is published, and it is
very apparent to my mind that a statement that the re-
spondent was a candidate for the office of lieutenant governor
on the republican ticket, accompanied by his photograph, is
a published statement wherein his photograph is published,
within the intent and meaning of the act. The majority say
that the published article or statement must advise or counsel
the electors to vote for the candidate, or set forth his fitness
or qualifications for office, as well as publish his photograph
or biography, before it comes within the prohibition of the
statute; but this view is, in my opinion, manifestly erroneous,
for at least two reasons. In the first place, the publication of
an article or statement advising or counseling the electors to
vote for a candidate, or setting forth his fitness or qualifica-
tions for office, without more, is a plain and palpable violation
of the act and works a forfeiture of the office, and it would be
an idle formality for the legislature to provide that such acts,

when accompanied by the publication of the candidate's biography or photograph, would have the like but no greater effect. In the second place, to permit a candidate for office to pay for the publication of his photograph accompanied by a statement of the office to which he aspires, in a newspaper published at regular intervals, is in direct violation of the provision of the first part of § 28, which prohibits a candidate from paying or contributing money to promote his candidacy except for personal expenses, and defines "personal expenses" in a manner that of necessity excludes the expenditures made bv the respondent in this case.

The claim is advanced that the provisions of § 28 are in a measure nullified, or at least rendered obscure, by the provisions of § 29. I am unable to discover the slightest conflict between the two sections. The former is directed solely against the offending candidate and provides a penalty for its violation. The latter is directed solely against the offending newspaper and provides a penalty of a different kind for its violation. Furthermore, the last clause of § 29 contains this express provision: "But this section shall not be construed as permitting the payment for any publication prohibited by section twenty-eight of this act;" and, as we have seen, the publication in question is twice prohibited by § 29.

Reference is made in the majority opinion to an opinion of the attorney general of this state, but I deem this of no consequence. The opinion of that officer cannot obscure a statute which is otherwise plain, though it may elucidate a statute which is otherwise obscure. Furthermore, the attorney general is only required by law to give written opinions to the governor and other state officers on legal and constitutional questions relating to the duties of their respective offices, or to either branch of the state legislature or committees thereof on constitutional or legal questions, when requested so to do. Bal. Code, § 169 (P. C. § 8379). An opinion of the attorney general, not authorized or required by law, stands upon no different footing from the advice of any other counsel, and

cannot be looked to or considered by a court in construing a public statute of the state. The will of the people as expressed at the polls should ordinarily prevail, but the mode of exercising that will is regulated and controlled by the constitution and laws of the state, and when there is a conflict between the two, the latter must prevail.

Inasmuch as the majority opinion fails to consider other objections urged by the respondent, I will not allude to them, further than to say that I find them without substantial merit.

The writ should issue as prayed.

FULLERTON, J., concurs with RUDKIN, C. J.

CHADWICK, J. (concurring)—Assuming § 28 of the primary law to be constitutional, I agree with all that has been said by Judge Rudkin. I believe it to be susceptible of construction, and that it does not conflict with § 29. I do not agree with the reasoning of Judges Mount and Crow, nor with the special reasons assigned by Judges Dunbar and Gose for their concurrence. Inasmuch as a majority of the court have decided that the writ shall not issue, it is perhaps idle to pursue the discussion, but because of the importance of this case, I feel that I am not unwarranted in expressing my reason for believing that the writ should be denied.

Section 28 of the act attempts to put restrictions upon the eligibility of the candidate that are not warranted by the constitution. It provides that a candidate offending against its provisions shall not be competent to qualify for the office to which he may have been elected. Eligibility of executive officers has been defined by the constitution of the state: "No person except a citizen and a qualified elector of this state shall be eligible to hold any state office," etc. Art. 3, § 25. In other words, the people have said that any one of their number who is a citizen of the United States and a qualified elector shall be eligible to hold the office of lieutenant governor. There is no qualification prescribed by statute for the elector that would bar the respondent in this case from assuming the

duties of the office to which he has been elected. Bal. Code, §§ 1320-1324 (P. C. §§ 4768-4771). Section 28 of the direct primary law clearly puts upon the citizen a test of eligibility not contemplated by the people when adopting the constitution. Although the respondent published an article or statement prohibited by § 28, this cannot be made, by mere statutory enactment, a disqualification, for the constitution leaves no room for such action on the part of the legislature. Many states have passed corrupt practice acts and made the expenditure of money by a candidate, beyond certain prescribed limits, a misdemeanor or a ground of contest, or have deprived the candidate of the emoluments of the office. These laws have generally been sustained. But any attempt to add additional qualifications or to impose any limitations on the terms of eligibility fixed by the constitution has found no favor except in two instances, to which I shall refer:

"Hence, whenever any public office of any kind is made elective, . . . the constitution becomes *ex proprio vigore* applicable and operative, and fixes the qualifications for eligibility. This is a denial of power to the legislature to impose any greater restrictions or to add other qualifications for eligibility to these prescribed by the constitution." *State ex rel. Childs v. Holman*, 58 Minn. 219, 59 N. W. 1006.

The constitution of the state of Minnesota provides that any person having the qualifications of a voter shall be eligible to office. In the old case of *Barker v. People*, 3 Cowen 686, it is said, in discussing the principle which I conceive to be involved here:

"Eligibility to public trusts is claimed as a constitutional right, which cannot be abridged or impaired. . . . The constitution giving the right of election and the right of appointment; these rights consisting essentially in the freedom of choice; and the constitution also declaring, that certain persons are not eligible to office; it follows from these powers and provisions, that all other persons are eligible. Eligibility to office is not declared as a right or principle, by any express terms of the constitution; but it results, as a just deduction,

from the express powers and provisions of the system. The basis of the principle is the absolute liberty of the electors and the appointing authorities, to choose and to appoint, any person, who is not made ineligible by the constitution. Eligibility to office, therefore, belongs, not exclusively or specially to electors, enjoying the right of suffrage. It belongs equally, to all persons whomsoever, not excluded by the constitution. I therefore conceive it to be entirely clear, that the legislature cannot establish arbitrary exclusions from office, or any general regulation requiring qualifications, which the constitution has not required."

See, also, McCrary, Elections, § 312; Mechem, Public Officers, § 96; *Thomas v. Owens,* 4 Md. 189.

In the case of *Page v. Hardin,* 8 B. Mon. (Ky.) 648, it was held that a statute requiring the secretary of state to reside at the seat of government could not work a forfeiture of the office in the face of a constitutional provision saying that he might hold the office for a prescribed term, "if he shall so long behave himself well." The supreme court of Ohio, *State ex rel. Attorney General v. Covington,* 29 Ohio St. 102, and the supreme court of Colorado, *Darrow v. People,* 8 Colo. 417, under constitutional provisions like our own, in that they say "No person shall be elected," etc., have held that this statement, being in the negative form, could not be taken as an inhibition upon the power of the legislature to add such *reasonable* qualifications as it deemed necessary in order to ensure an efficient and proper discharge of the office and, I may add, to ensure an incumbent who has the interest of a taxpayer in the execution of his trust. The rule adopted by these courts is as follows:

"We do not believe that the framers of the constitution, by this provision, intended to say that the right to vote should be the sole and exclusive test of eligibility to all civil offices, except as otherwise provided in the instrument itself; that no additional qualifications should ever be demanded, and no other disqualifications should be imposed. If, as has been well said, they 'had intended to take away from the legislature the power to name disqualifications for office, other than the one

named in the constitution, it would not have been left to the very doubtful implication which is claimed from the provision under consideration.' *State ex rel. Attorney General v. Covington*, 29 Ohio St. 102." *Darrow v. People, supra.*

I am not willing to admit this to be the better rule, but if it be the rule, it in no wise militates against my attitude toward the case at bar. It cannot be denied that, if the legislature has power to add other qualifications to those fixed in the constitution, they must be *reasonable.* It must be within the spirit if not the letter of the constitution. Now, is the provision that one who publishes an article or statement, as provided in section 28, a reasonable one? It cannot be so held. It does not go either to the character, capacity, sex or age of the candidate or his pecuniary interest in the affairs of state. It puts a test of eligibility ("he shall not be competent to qualify") upon the successful candidate unknown to the law, and in no way tending to safeguard the privilege of the public to select officials possessing some recognized standard of fitness. The condition is arbitrary and unreasonable. It does not pertain to the citizenship or mental or moral worth of the candidate. Therefore, in construing the constitutional provision, whether it be held that the legislature can add no qualification, or may add such reasonable qualifications as are not excluded by necessary implication, it makes no difference. Under the first construction, the respondent is entitled to his office; under the second, he cannot be denied, for the reason that the added qualification is neither reasonable or necessary to the faithful and competent administration of his office. Upon either theory section 28 violates section 25, art. 3, of the constitution.

The writ should have been denied for the reasons herein suggested.